34 F.3d 1066
 146 L.R.R.M. (BNA) 3152, 147 L.R.R.M. (BNA) 3024
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bruce B. HENRY, Plaintiff-Appellant,
and
Robin L. Covert, Plaintiff,
v.
NATIONAL ASSOCIATION OF AIR TRAFFIC SPECIALISTS,
INCORPORATED; Mark A. Boberick; Paul S. Huffman;
Ronald A. Maisel; Michael F. McAnaw;
Craig A. Campbell; Walter W.
Pike, Defendants-Appellees,
and
Jerome D. Lamb; James A. Hayes, Defendants.
 No. 93-2526.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 12, 1994.
Decided: Aug. 4, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson E. Legg, District Judge. (CA-92-1234)
 ARGUED: Frank Leo Kollman, Kollman & Sheehan, P.A., Baltimore, Maryland, for Appellants.
 Arthur Lowell Fox, II, Kator, Scott & Heller, Washington, D.C., for Appellees.
 D.Md.
 AFFIRMED.
 Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Bruce B. Henry appeals the entry of summary judgment against him on his state-law claims of wrongful discharge, breach of contract, and libel against his former employer, the National Association of Air Traffic Specialists, Inc. (NAATS), and certain members of the NAATS Board of Directors. The claims arise out of a bitter struggle for control of NAATS between Henry, who served as its President, Chairman of the Board, and Executive Director, and the other members of its Board. We affirm.
 
 I.
 
 2
 NAATS is a union representing approximately 1700 air traffic specialists employed by the Federal Aviation Administration. The constitution and bylaws of NAATS vest all of the union's policymaking authority in an eight-member Board of Directors. The Board is composed of certain officers of the union who are elected by vote of its membership: the President, who serves as the union's principal executive officer and as Chairman of the Board, and the seven Regional Directors. The bylaws also provide for a salaried Executive Director, who is appointed by the Board to run the union's national office and conduct its day-to-day business under the direction of the President and the Board of Directors.
 
 
 3
 Henry was elected President of NAATS in October 1984. Shortly thereafter, he was appointed by the Board to the salaried position of Executive Director. At its March 17, 1992 meeting, the Board voted 5-2 to remove Henry as Executive Director, because of dissatisfaction with his performance.[1] Over the next several months, the union membership was bombarded with open letters from Henry and the other Board members about the events surrounding the removal. In those letters, which were generally quite acrimonious in tone, each side sought to justify its actions and to persuade the union membership that the other side was in the wrong.
 
 
 4
 Several weeks after Henry's removal, his lawyer sent a letter to NAATS, in which he alleged that the Board had published unspecified libelous statements about his conduct, demanded that it retract those statements and reinstate him as Executive Director, and threatened legal action if it did not do so immediately. When NAATS failed to accede to his demands, Henry filed this action against it and the other members of its Board in Maryland state court, seeking emergency injunctive relief under 5 U.S.C. Sec. 7120 and $1 million in compensatory and punitive damages under Maryland law.[2] After defendants removed the case to the United States District Court for the District of Maryland and filed a motion to dismiss, Henry amended his complaint to include only five claims, all based on state law: wrongful discharge, breach of contract, intentional interference with contractual relations, wrongful interference with economic relations, and libel.[3] Defendants moved to dismiss this amended complaint as well. The district court held their motion in abeyance while the parties continued to engage in discovery. After several months of discovery, the court advised the parties that it was converting the motion into a motion for summary judgment, and that it was prepared to grant summary judgment for the defendants on all counts unless Henry came forward with certain additional evidence. After receiving and considering submissions from both sides, the court finally granted summary judgment for the defendants on all five counts of the amended complaint. The portion of the district court's analysis which is relevant to this appeal can be briefly summarized as follows.
 
 
 5
 The court first considered Henry's claims for breach of contract and wrongful termination, which alleged that the Board had violated the terms of his employment contract and public policy by removing him as Executive Director without just cause and without notice and a hearing. The court noted that under Maryland law, an agreement to employ someone for an indefinite period is generally considered to be an "at will" contract which may be terminated by either party at either time, Adler v. American Standard Corp., 432 A.2d 464, 467 (Md.1981), but provisions in employee handbooks and other statements of employer personnel policy which purport to "limit the employer's discretion to terminate an indefinite employment or [to] set forth a required procedure for such termination may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." Staggs v. Blue Cross of Maryland, 486 A.2d 798, 803 (Md. Ct. Spec. App), cert. denied, 493 A.2d 349 (Md.1985); see Dahl v. Brunswick Corp., 356 A.2d 221, 224 (Md.1976). Henry alleged that the Board of NAATS had adopted and communicated to him various "policy statements" which promised that he would be terminated as Executive Director only for "just cause," and then only after notice and a hearing. After reviewing the materials submitted by Henry, however, the court found that he had failed to come forward with any evidence to substantiate his allegations that any such "policy statements" existed, and that his allegations were rather conclusively rebutted by the documentary evidence presented by the defendants, including the NAATS by-laws and the minutes of several Board meetings. These, the court ruled, demonstrated that both the Board and Henry himself understood that he had no employment contract as Executive Director, and that the Board could remove him from that position at will, with or without cause and with or without notice and a hearing, upon nothing more than a simple majority vote of the Board. Because the undisputed evidence established that the Board followed that procedure when it removed Henry, the court concluded that the defendants were entitled to summary judgment on Henry's claims for breach of contract and wrongful termination.
 
 
 6
 The court then turned to Henry's libel claim, which was based on the various letters sent by the other Board members to the union membership to explain their decision to remove Henry as Executive Director. The court first concluded that Henry was required to meet the "actual malice" standard of New York Times v. Sullivan, 376 U.S. 254 (1964), for two alternative reasons: because he was a "public figure,"[4] and because the statements in question were made in the context of a labor dispute.[5] After carefully reviewing the summary judgment record, the court then held that defendants were entitled to summary judgment on the libel claim because Henry had failed to produce any clear and convincing evidence of actual malice, and because all of the statements he claimed were defamatory were in any event statements of opinion, not fact, and thus not actionable as libel.
 
 
 7
 Henry appeals. Raising the same basic arguments that he made in the district court, he urges us to set aside the entry of summary judgment against him on his claims of wrongful termination, breach of contract, and libel, and to remand the case for further proceedings with respect to those claims. He does not challenge the entry of summary judgment against him on the two remaining counts of the amended complaint--intentional interference with contractual relations and wrongful interference with business relations.
 
 II.
 
 8
 We have carefully considered the district court's opinion, which we find to be particularly careful and thorough; the written and oral arguments of counsel; and the relevant portions of the record. Having done so, we find no reversible error in the district court's disposition of the defendants' motion for summary judgment. We therefore affirm the district court's judgment for the reasons stated in its opinion. Bruce Henry et al v. National Assoc. of Air Traffic Specialists, Inc., et al, Civil No. L-92-1234 (D. Md. Oct. 27, 1993).
 
 AFFIRMED
 
 
 [1]
 At the same time, the Board voted to withdraw its appointment of Robin Covert, a political ally of Henry's, as Executive Vice President
 
 
 [2]
 Covert originally joined Henry as a plaintiff in this action. The district court also dismissed his claims on summary judgment, but Covert has not appealed that ruling, and indeed appears to have abandoned the action altogether
 
 
 [3]
 Though the district court could have remanded the case to state court at that point, since it now consisted entirely of state-law claims and there was no diversity, neither side asked it to do so, and it elected to retain jurisdiction
 
 
 [4]
 Applying the analysis set forth in Reuber v. Food Chemical News, Inc., 925 F.2d 703, 708-10 (4th Cir.), (en banc) cert. denied, 501 U.S. 1212 (1991), the court held that Henry was a "public figure" subject to the "actual malice" standard, because he held a position of "prominence as elected and appointed leader[ ] of a 1700-member union," held himself out to the union membership and the FAA as a leader of the NAATS, "had access to channels of effective communication," and "assumed the position[ ] of prominence by attempting to influence union membership." JA 290 n. 6
 
 
 [5]
 Here, the court relied upon Linn v. United Plant Guard Workers, 383 U.S. 53 (1966), which held the "actual malice" standard applicable to all libel claims arising out of labor-management disputes, whether or not the plaintiff was a "public figure." Id. at 63-65. The court conceded that the dispute between Henry and the other Board members was "technically not a labor management dispute," but a dispute between competing factions within a union for control of that union. But it reasoned that this sort of intra-union political dispute was so closely analogous to a labor management dispute that it should also be covered by the Linn rule, since both involved two sides "vying for the good opinion (and votes) of [the] union membership" by means of "vigorous" and "vituperative" public relations campaigns designed "to sway [the] union membership" into voting a certain way. JA 289-90 & n. 5; JA 276 n. 2